IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ELMER WILLIAMS,** *et al.*                                              **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO. 2:14-CV-116-KS-MTP**

**BRANDON ROGERS,** *et al.*                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For reasons provided below, the Court **grants** Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment [17].

## I. BACKGROUND

This case arises from an automobile accident. Plaintiff Elmer Williams was driving a vehicle; Defendant Brandon Rogers was his passenger. Rogers was intoxicated, and he dropped a lit cigarette on the floor of the vehicle. Williams attempted to find the cigarette and ran off the road. The vehicle rolled over several times, injuring Williams. At the time of the accident, Williams was insured under an automobile insurance policy issued by Defendant State Farm Mutual Automobile Insurance Company. State Farm paid Williams $5,000 in medical benefits, exhausting his medical payments coverage. It also paid him $23,236.50 in property damage benefits.

Williams and his wife filed a Complaint [1-2] in the Circuit Court of Forrest County, Mississippi, which was removed [1] to this Court. Plaintiffs asserted claims of negligence and negligent infliction of emotional distress against Rogers; and claims of breach of contract, breach of the implied duties of good faith and fair dealing, and

bad faith against State Farm. On May 11, 2015, State Farm filed a Motion for Summary Judgment [17], which the Court now considers.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## III. DISCUSSION

### A.  *Breach of Contract*

Plaintiffs contend that State Farm breached the insurance policy by failing to

2

pay him additional bodily injury benefits under the policy's uninsured motorist ("UM") coverage. In Mississippi, a party asserting a breach of contract must prove 1) the existence of a valid and binding contract, and 2) that the opposing party has broken, or breached it. *Business Communs., Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012). It is undisputed that a valid insurance contract existed between the parties. The Court must determine whether Plaintiff presented evidence that State Farm breached it.

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.*

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 419 (5th Cir. 2008); *see also Corban*, 20 So. 3d at 609; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13

So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). The Fifth Circuit has also highlighted the following principles applicable to UM claims:

> First, the Mississippi Supreme Court has repeatedly stated that courts should liberally construe the provisions of the UM Act to effectuate the remedial and humanitarian purposes of the Act. Second, uninsured motorist provisions within automobile insurance policies must be interpreted from the standpoint of the insured. Third, if the provisions of the UM Act provide broader protection than the uninsured motorist policy, then the terms of the Act become part of the policy, providing the insured a statutory level of monetary protection. Fourth, although the Mississippi Supreme Court has not always closed its judicial eye to the insurance law of other jurisdictions, the court has more recently suggested that courts interpreting Mississippi uninsured motorist law should be "guided by [the terms of Mississippi's] uninsured motorist statute, not the jurisprudence of foreign jurisdictions.

*Boatner v. Atlanta Specialty Ins. Co.*, 115 F.3d 1248, 1253-54 (5th Cir. 1997).

The policy's [18-4] UM coverage provides:

1. Under **Uninsured Motor Vehicle Coverage (Bodily Injury)**, *we* will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury*** must be:

   a. sustained by an ***insured***; and

   b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle*** as a motor vehicle.

This provision mirrors the requirements to recover on a UM policy under Mississippi law: "(1) the insured must be legally entitled to recover damages for bodily injury or death; (2) from the owner or operator; (3) of an uninsured motor vehicle." *USAA v. Shell*, 698 So. 2d 96, 98 (Miss. 1997) (citing MISS. CODE ANN. § 83-11-101). The Court

will assume that Williams is "legally entitled to recover damages for bodily injury" from Rogers, and that Williams' vehicle meets the statutory and policy definitions of an "uninsured motor vehicle."

Plaintiffs argues that Rogers – Williams' intoxicated passenger – became the "operator" of the vehicle when Williams leaned down to retrieve the cigarette that Rogers had dropped on the floor. In Plaintiffs' own words: "Rogers became the operator of the vehicle as the only person who could see where the car was going and navigate the steering wheel with his left hand. Defendant Rogers was at fault in causing the accident by failing to keep a proper lookout and failing to control the vehicle . . . ."

In support of this argument, Plaintiffs cite language from the Mississippi Supreme Court's decision in *USAA v. Shell*, 698 So. 2d 96 (Miss. 1997). There, the estate of a driver who had been murdered by a hitchhiker argued that the hitchhiker became the "operator" of the vehicle when he pulled a gun on the driver and told him where to drive. *Id.* at 98-99. The Court noted:

> "There is considerable authority to the effect that the word 'operate,' as used in the coverage or exception provisions of automobile policies, means to regulate and control the actual operation of the car, that is, to have charge of it as the driver." 7 Am. Jur. 2d Automobile Insurance § 127. The definition further notes that "there is also authority to the effect that the terms are not limited to such direct physical control of the vehicles," such that one has been found to be an operator when exercising some control over a vehicle though not sitting in the driver's seat. The few cases defining "operator" are highly fact-specific and focus on the degree of control exerted by the one alleged to be the operator and the vehicle, not as the estate would try to persuade us, by the control exerted over the driver of the vehicle. At least one court, therefore, has defined "operator" as synonymous with "driver."

*Id.* at 99 (some citations omitted). The Court concluded that "neither the law nor the

evidence supports the estate's claim that" the hitchhiker became the "operator" of the vehicle when he pulled a gun on the driver. *Id.* at 100.

Even if the Court assumes that the Mississippi Supreme Court would buy Plaintiffs' theory of UM liability – in which a designated driver can relinquish control of his moving vehicle to an uninsured drunk passenger and recover from his own UM coverage – Plaintiffs provided no evidence that Rogers exerted control over the vehicle. To be clear: the record contains no evidence whatsoever that Rogers "regulate[d] or control[led] the actual operation of the car," had "charge of it as the driver," or exercised any control over the vehicle's operation. *Id.*

Both the policy and the UM statute require that Williams' injuries be caused by the "owner or operator" of an uninsured motor vehicle. It is undisputed that Rogers did not own the vehicle, and Plaintiffs provided no evidence that Rogers was the operator of the vehicle at the time of the accident. Accordingly, the Court finds that State Farm did not breach the policy. Plaintiffs are not entitled to UM benefits under the terms of either the policy or the statute.

### B.     *Breach of Implied Duties of Good Faith and Fair Dealing*

There can be no breach of the duty of good faith and fair dealing without a breach of the underlying contract. *See, e.g. Daniels v. Parker & Assocs., Inc.*, 99 So. 3d 797, 801 (Miss. Ct. App. 2012); *Frye v. S. Farm Bureau Cas. Ins. Co.*, 915 So. 2d 486, 492 (Miss. Ct. App. 2005); *Ishee v. Fannie Mae*, No. 2:13-CV-234-KS-MTP, 2015 U.S. Dist. LEXIS 15223, at *42 (S.D. Miss. Feb. 6, 2015); *Willis v. Allstate Ins. Co.*, No. 2:13-CV-60-KS-MTP, 2014 U.S. Dist. LEXIS 155004, at *42 (S.D. Miss. Oct. 31, 2014); *Gum*

*Tree Prop. Mgmt., LLC v. Coleman*, No. 1:12-CV-181-SA-DAS, 2014 U.S. Dist. LEXIS 38306, at \*12-\*13 (N.D. Miss. Mar. 24, 2014). Therefore, as Defendant State Farm did not breach the policy, the Court likewise finds that it did not breach the implied duty of good faith and fair dealing.

### C.  *Bad Faith*

To prove a bad faith claim, Plaintiffs "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *United States Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992); *see also Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 233 (Miss. 2001). Both elements are "questions of law to be decided by the trial judge." *Jenkins*, 794 So. 2d at 233.

Plaintiffs have not provided any evidence that State Farm acted "with malice or gross negligence in disregard of the insured's rights." *Wigginton*, 964 F.2d at 492. Likewise, Plaintiffs have not provided any evidence to show that Defendant's denial of UM coverage was "without an arguable or legitimate basis, either in fact or law." *Id.* Accordingly, summary judgment is appropriate as to their bad faith claim.

### IV. CONCLUSION

For these reasons, the Court **grants** Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment [17].

On November 24, 2014, the Court denied Plaintiffs' Motion for Default Judgment [13] as to Defendant Rogers, based on Plaintiffs' failure to provide any

substantive discussion of the Mississippi law applicable to those claims. Rogers has still not appeared, and Plaintiffs have not re-urged or amended their motion for default judgment. Although the Court's order did not explicitly say so, its denial of the motion for default judgment was without prejudice. Therefore, Plaintiffs may file an amended motion for default judgment within fourteen days of the entry of this order. If Plaintiffs do not file an amended motion for default judgment within that time period, the Court will dismiss their claims against Rogers without prejudice for their failure to prosecute and comply with the Court's order. *See EastWest Bridge v. Tech. Partners FZ, LLC*, No. 3:11-CV-2417-L, 2015 U.S. Dist. LEXIS 121128, at *17 (N.D. Tex. Sept. 11, 2015).

SO ORDERED AND ADJUDGED this 1st day of October, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE